## OEL F. ROBINSON *vs.* MORRIS & COMPANY.

### JULY 7, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Negligence. Evidence. Animals.*

A teamster in employ of defendant left a team of horses, one of which was known by the servants of defendant to be nervous and inclined to be frightened by automobiles, unhitched and unattended, while the teamster went into defendant's place of business, where he intended to remain but a few moments. A hitchrope and weight were in the wagon. During his absence the horse was frightened by an automobile, and both horses ran, the wagon striking plaintiff, who was crossing the street. Plaintiff had seen the horses, and had stepped out of the way, and the wagon would have cleared him had it not struck another wagon, causing it to slue around and strike him:—

*Held*, that evidence of the direction taken by the horses immediately after the accident was admissible as a part of the *res gestæ*.

*Held*, further, that evidence as to what the driver did with the weight after the accident was admissible as showing that the weight and hitchrope were intact and capable of being used after the accident.

*Held*, further, that evidence that the driver employed witness, at a time anterior to that of the runaway, to hold the horses, was admissible, to show that driver recognized the necessity for exercising restraint over the horse.

(2) *Evidence. Ordinances.*

*Held*, further, that it was not error to admit ordinance of the city of Providence relative to leaving an animal unfastened in a highway, although it was not as applicable to the situation as Gen. Laws, cap. 74, § 4., since, in leaving the team as he did, the driver was guilty of willful recklessness.

(3) *Directing Verdicts.*

A verdict should not be directed for defendant where there is not an overwhelming preponderance of evidence in favor of the defendant.

(4) *Right of Way in Public Highways.*

Requests to charge that vehicles have the right of way over pedestrians on public highways; that vehicles have the right of way over pedestrians on public highways between intersecting streets:—

*Held*, properly refused.

(5) *Declarations. Elements of Damage.*

Declaration considered, and held to be sufficiently explicit to cover claims for nervous shock, nervousness, and loosening or disarrangement of teeth.

(6) *Requests to Charge. Leaving Horses unhitched in Highway.*

Request to charge that if an ordinarily prudent man would not have hitched the horses at the time and place and under the circumstances in question, defendant was not guilty of negligence:—

*Held,* properly refused; since the duty of all men in this regard is defined by
Gen. Laws, cap. 74, § 4.

(7)  *Leaving Horses in Highway.*

Charge of the court that it is necessary either to have a horse left in the high-
way properly secured or else to have somebody in immediate attendance
upon it so as to exercise control over it, by voice or action, is a correct state-
ment of the law.

Trespass on the Case for negligence.  Heard on excep-
tions of defendant, and overruled.

Dubois, C. J.   This is an action of trespass on the case for
negligence, brought by the plaintiff to recover damages for
personal injuries which he received in collision with a wagon
drawn by a pair of runaway horses belonging to the defend-
ant company.   The accident occurred on the morning of the
twenty-fourth day of April, 1905, on Canal street, in the city
of Providence.

The case was tried before a jury in the Superior Court, and
resulted in a verdict for the plaintiff, wherein damages were
assessed in the sum of three thousand two hundred and fifty
dollars.

The defendant filed a motion for a new trial in the Superior
Court, which was denied by the judge who presided at the trial,
and the case is now before this court upon the defendant's
bill of exceptions, containing thirty-two grounds, whereof the
first eight relate to the rulings of said judge in admitting cer-
tain evidence against the objection of the defendant.   The
ninth ground is based upon the refusal of the trial judge to
direct a verdict for the defendant.   Fifteen grounds, viz.:
from the tenth to the twenty-fourth, both inclusive, relate
to the refusal of said justice to charge the jury in accordance
with the defendant's requests.   The next three specify cer-
tain alleged errors of the trial judge in his charge to the jury,
and the balance have reference to the decision of the judge
denying said defendant's motion for a new trial.

The evidence discloses the facts that on the day in question
a teamster, in the employ of the defendant company, left their
team of horses, consisting of a bay horse, of mature years and
good habits, and a young black horse, brought to Providence

from the West a few months before, which was known by the servants and agents of the defendant company to be nervous and shy, and inclined to be frightened by automobiles, harnessed to one of their large, uncovered, and empty express wagons, unhitched and unattended while he went into the place of business of the defendant, where he intended to remain but a few moments. It appeared that a hitchrope and weight were in the wagon. During the absence of the teamster the black horse was frightened by a passing automobile, and the fright resulted in a runaway in which both horses participated. The horses ran along Canal street, which was lined with teams on both sides, towards Market square; not in a straight line, however, but in a serpentine, or zigzag, manner, so that, as the horses ran, the wagon struck against various other horses or vehicles, first on one side of the street and then on the other. At the time of the starting of the runaway the plaintiff was going from his place of employment, at the What Cheer Beef Company, on Canal street, to the restaurant of one Gardner, which was on the opposite side of the street, but nearer Market square than the beef-house of the What Cheer Company; that he was crossing Canal street diagonally, and had gotten six or eight feet out from the curb when his attention was attracted to these horses and he stepped back out of their way, and they passed him safely, and the wagon also would have cleared him if the same, in its zigzag course, had not struck another wagon, on the opposite side of the street, which caused it to slue around and strike the plaintiff, with the hub of the off hind wheel, on the outside of his left leg, about four inches above the knee, causing him to be thrown up several feet from the ground and against another wagon, and then to fall and to sustain several injuries on the left side, including injuries to his head and face, the bones of which were broken; to his ear, which was nearly torn off; to his arm and shoulder, and shock to his nervous system. For these injuries, some of which are permanent and disfiguring, we can not say that the jury awarded excessive damages. We therefore pass to a consideration of the defendant's exceptions.

(1)     The first and second exceptions relate to the ruling of the court in permitting testimony to be given as to the direction taken by the horses immediately after the accident.   We see no error in the ruling; it was clearly a part of the main narrative, a portion of the *res gestæ.*

The third exception is without merit; it was taken during the testimony of Emor E. Carpenter, and arose as follows: "Q. 11. What attracted your attention to the accident?   A. I heard a noise and looked out.   Q. 12. What did you see? A.   I saw this pair of horses running away, of Morris & Company's.   Q. 13. What happened as they went by?   A. Well, the wagon began to swing.   MR. WATERMAN—I object to what happened after the accident, as it does not seem to me it throws any reasonable light.   Q. 14. Go ahead.   MR. WATERMAN—As I remember the answer to the former question, he said he heard a noise at the time of the accident and then something apparently following.   THE COURT—Well, Mr. Waterman, I have ruled, admitting what happened immediately after, and I make the same ruling and give you an exception.—Defendant's exception noted.—  Q. 13. And answer thereto, as given by witness, read by stenographer.   Q. 15. Go ahead.   A. I see it strike Mr. Robinson.   Q. 16. In what direction was the wagon travelling when it struck Mr. Robinson?   A. South, towards Market square.   Q. 17. In a straight line or otherwise?   A. Kind of crossways, zigzag.   Q. 18. Did you see the wagon strike Mr. Robinson?   A. Yes, sir.   Q. 19. Will you tell the jury where he was and what happened to him when it struck him?   A. He was going across the street to the restaurant.   Q. 20. Go ahead.   A. The wagon came down and began to zigzag and the horses just grazed him, and the rear wheel, the hub struck him, and he went up in the air about 10 feet and came down and struck on this other wagon. Q. 21. What kind of a wagon was it that he struck against? A. A small market wagon.   Q. 22. How fast were these horses going when they struck him?   A. I should say about 12 miles an hour.   Q. 23. What did you do when you saw the accident?   A. I went out and picked him up.   Q. 24. Did you follow the wagon down?   A. No, sir."   It clearly appears

that the testimony does not relate to any time after the accident.

The fourth exception was to Q. 54, asked of the witness, Max Smith, as follows; "Will you tell what you saw the driver do (after the accident and with reference to the horses concerned in the runaway) with reference to the weight when he went back to the store? A. When he got back to the store, he took the weight out of the wagon and put it on the black horse." This was perfectly proper testimony to show that the weight and hitchrope were intact and capable of being used after the accident.

The fifth exception is founded upon defendant's objection to the answer of George E. Johnson, a witness for the plaintiff, to Q. 200 asked by counsel for defendant in cross-examination, as follows: "And what was Mr. Robinson doing at the time? A. I saw him when he stepped out from behind these other teams, and just then this wagon slewed to one side and it looked to me as though he— Q. 201. Tell what you saw, not how it looked. MR. HOGAN—I think the witness is entitled to tell his answer in his own way, and I object to Mr. Waterman cutting off his answer in the middle of it. MR. WATERMAN— He has already told what he saw. THE COURT—We all know that when a witness is telling what he sees, it is a shorthand method of telling what he sees by telling how it looked to him. It is simply his report of what he saw—. C. Q. 200. and answer read by stenographer. THE COURT—Defendant's exception noted. Ans. As though he turned north to go back, jumped back quick, and this wagon, the back of this wagon struck him and knocked him down, up against the other teams, and I couldn't see after that because I ran to get out of the way." The answer was responsive and unobjectionable. The justice of the Superior Court was clearly right in his ruling.

The sixth exception is to the following ruling of the court: "If he (George E. Johnson) was employed to hold that horse he may say so." "Q. 209. Were you or not? A. Yes sir." The horse, referred to, was the black horse concerned in the runaway. The person by whom the witness was employed was the defendant's driver, Nelson, and the time of the em-

ployment was anterior to that of the runaway in question. It was perfectly proper to show that the defendant's driver recognized the necessity for exercising control and restraint over this horse. There is no merit in the exception.

The seventh exception is ineffectual, for after it had been taken, and while the subject thereof, viz.: a letter, written by the plaintiff, concerning the time, place, circumstances of, and witnesses to his accident, was being read by his counsel, the following proceedings were had relative to the same: " MR. WATERMAN—My objection is to what other people saw. I note an exception to the general admission, but it is in another sense what other people say. THE COURT—At this part of the case I do not think it is admissible. MR. WATERMAN— I ask that it be ruled out. I think that covers about everything. THE COURT—It may be stricken out. MR. HOGAN— This letter is signed by Mr. Robinson himself. You object to any more of it being read; all right. THE COURT—I think the part that is hearsay should be ruled out. MR. WATERMAN— I think that as it is in the whole thing ought to be filed among the papers, just as certain other papers. THE COURT—As soon as I give you what you want you do not want it. It is hard to please both of you."

(2)     The eighth exception is founded upon the defendant's objection to the plaintiff's introduction in evidence of ordinances of the city of Providence, 1899, as follows: MR. HOGAN—Ordinances of the city of Providence, chapter one, section one: ' No horses, sheep, hogs, goats or cattle shall go at large, loose, or unfastened in any street or highway within the limits of the city.' Chapter 20 of the Ordinances—that is on page one; chapter 20 of the Ordinances, section 15, on page 53: ' Every person having control of any horse or other animal, attached to any vehicle, and every person having control of any bicycle, tandem, tricycle or any vehicle, shall use every effort in his power to prevent such animal or vehicle from running against or afoul of any person, vehicle or thing, whatsoever.' " No harm was done by the admission of the ordinances, although their provisions are not as applicable to the situation as those of Gen. Laws, cap. 74. § 4: " Every person having charge

of any wheel carriage of any kind, or sled or sleigh, with any kind of team, who shall negligently or wilfully leave the same to go at large in any highway shall be fined five dollars." This is a public statute of which the court takes judicial cognizance. The defendant's driver in leaving the team, composed in part of a nervous horse, which he knew was liable to start and run through fear of an automobile, unhitched and unattended in a public highway, where automobiles were apt to come and did come, did leave them to go at large when he went away, having done nothing to prevent them from going at large in his absence. It would be negligent to leave any team of horses, at such a time and in such a place, and under such circumstance, so unrestrained; but with the knowledge that he had of the proclivities of one of the animals in the team, it was recklessness amounting to willfulness for him to leave them, for a period of from three to five minutes, in the busiest part of the day, in a crowded street, where human life and limb might be thereby imperilled, to say nothing of the injury to themselves and other animals, and the damage to property, that might result from their going at large or running away. Revised Statutes of 1857, cap. 47, "Of Traveling on Highways," section 4, contains the same provisions. More than half a century ago in a sparsely settled community, at a time shortly after the advent of steam railroads; in the days of stage coaches and omnibuses, and before horse-cars had been thought of, and hence long before their evolution into electric cars could have been dreamed of, the legislature saw fit to require such care to be taken in the use of the highways as they then existed and as they then were used. There is no reason for relaxing such precautions in these days of increasing travel by modern agencies of speed and danger upon the public highways. There is every reason for requiring a strict compliance with such reasonable rules.

(3)    The ninth exception is to the refusal of the court to direct the jury to return a verdict for the defendant. The court certainly should not have directed a verdict unless there was an overwhelming preponderance of evidence in favor of the defendant. Of course it was necessary for the plaintiff to prove

that at the time of the accident he was in the exercise of due care, that the defendant was negligent, and that he received injuries in consequence of such negligence. Proof that the defendant's servant, in charge of the team, was negligent in leaving the team to go at large was evidence of the defendant's negligence; proof that the plaintiff was injured by the runaway team, so permitted to go at large, was sufficient proof to go to the jury, provided that the plaintiff offered evidence tending to prove that he was in the exercise of due care; proof of where the plaintiff was going, when he was overtaken and struck by the defendant's wagon; how he was going; the manner in which he looked and listened; what he did; how he stopped in time to avoid the horses; the manner in which he was caught by the wagon, were circumstances for the jury to weigh in determining whether he was exercising such care as an ordinarily careful and prudent man would have exercised at the time and place and in the circumstances. The court rightly refused the motion.

The tenth, eleventh and twelfth exceptions relate to the refusal of the court to charge as follows:

"Fourth:—Vehicles have the right of way over pedestrians on public highways.

"Fifth:—Vehicles have the right of way over pedestrians on public highways between intersecting streets.

"Sixth:—Vehicles have the right of way over pedestrians on public highways at the point where the plaintiff was crossing."

The defendant does not press these exceptions in his brief or argument, and presents no authority in support of them. The requests were rightly refused by the court.

The thirteenth, fourteenth, and fifteenth exceptions are founded upon the refusal of the court to charge the jury as follows: "It was the duty of the plaintiff to look and listen for approaching vehicles before going upon the street, and if he failed to do so, and was injured in consequence thereof, he can not recover."

"It was the duty of the plaintiff to look and listen for approaching vehicles before attempting to cross the street."

"It was the duty of the plaintiff to show, by a preponderance of testimony, that he looked and listened for approaching vehicles before crossing the street; and if he failed to do so, and this contributed to his injury, the verdict must be for the defendant."

The foregoing requests were properly refused; the jury had been correctly charged upon the subject by the court.

The sixteenth, seventeenth and eighteenth exceptions relate to the refusal of the court to charge as follows:

(5)    "The plaintiff can only recover for injuries to his knee, leg, the fracture of his jaw, partial severance of his ear, and for the pain and suffering incident thereto, and the medicines and medical attendance necessary to heal and cure his injuries.

"The plaintiff cannot recover for the nervous shock or nervousness, as he has not alleged the same in his declaration.

"The plaintiff cannot recover for the loosening and disarrangement of his teeth, as he has not alleged the same in his declaration."

The portion of the plaintiff's declaration that relates to his injuries, and damages, reads as follows: "So that he was injured in and about his knee and leg, and he was struck in the head so that his jaw was fractured and broken, and his ear was, to wit: partly severed from his body, and he then and there became unconscious and so remained for a long time, and he was otherwise seriously and permanently injured internally, and was injured and permanently disfigured externally, and he then and there suffered and endured great pain and agony, and became and was sick, sore, lame and disordered, and so remained and continued for a long space of time, to wit: from thence hitherto, and has been put to great expense for medicines and medical attendance in endeavoring to heal and cure his said injuries, and he has been incapacitated from performing any labor, and for a long time to come he will continue to suffer further great pain and agony and will be further incapacitated from performing any labor, and will be put to further great expense for medicines and medical attendance, and he has been and is greatly and permanently injured and disabled by reason and in consequence of the premises and of

the negligence of the defendant company, its agents and ser-
vants, in manner aforesaid." The charge of the court relative
to this subject was as follows: "Gentlemen, it is your duty
to find that the defendant was liable, before you come to the
question of damages. You must first determine whether or
not the defendant is liable as charged. Unless you find that
he was, of course it is your duty to find for the defendant; but
if you find that he was, that the defendant was guilty of negli-
gence and that the plaintiff was free from negligence which
contributed to the injury, then it is your duty to find for the
plaintiff, and you should then take up the question of damages;
and if this company is liable, they are liable to reimburse this
man for such injuries as he suffered, and such as rather—
natural consequences of the injuries that he suffered. They
are liable to reimburse him for pain and suffering, for medical
expense caused in curing the injuries which resulted from this
accident, and for any disfigurement, if there is any, gentlemen,
he is entitled to compensation. I find, gentlemen, on examin-
ing the declaration, that there does not seem to be any count
in there for loss of wages. I shall therefore be obliged to say
to you that you can not take that into consideration, but for
pain and suffering and for disfigurement, and for expenses,
doctor's expenses, medical expenses, dentist's expenses, and
nurses, and for medicine, he is entitled to recover, if this de-
fendant is liable. I think, gentlemen, that is all I need to say
to you."

The charge in this particular, although brief, is comprehen-
sive. And the declaration is sufficiently explicit to cover
claims for nervous shock, nervousness, and loosening or dis-
arrangement of the teeth.

The nineteenth and twentieth exceptions are based upon
the refusal of the court to charge as follows:

"The plaintiff cannot recover for the bronchitis or expenses
incident thereto, because he has not alleged the same in his
declaration.

"If the plaintiff's trip South was made necessary by the
bronchitis or by the nervousness of the plaintiff, he can not re-
cover the expenses of that trip, because he has not alleged in

his declaration that he was caused to have bronchitis or nervousness."

The former of the foregoing requests was entirely unnecessary; there is nothing in the record to indicate that the plaintiff was seeking to recover damages for the bronchitis—the fact that he had that disease came out in the testimony as a part of his physical history since the accident. It may have indicated a weakened condition of the plaintiff which rendered him less capable, for the time being, of coping with physical ailments. It certainly was not made the subject of a substantive claim for damages. The request was rightly denied. The latter request was also properly refused, because, as we have already decided, the declaration covers claims for damages arising from nervousness.

The twenty-first exception must be overruled, as the court had already charged as requested by the defendant.

The twenty-second exception relates to the refusal of the court to charge as follows: "The plaintiff is not entitled to recover on account of the bronchitis or any expense that he went to in curing himself of the bronchitis, as the accident was not the proximate cause of the bronchitis."

The request was properly denied by the court. It was no part of the duty of the court to ascertain and instruct the jury as to the origin of the bronchitis suffered by the plaintiff, or to instruct them whence it did not arise. It was an attempt to obtain from the court an instruction to the jury upon a matter of fact involved in much obscurity.

The twenty-third and twenty-fourth exceptions have reference to the denial of the court to charge the jury as follows:

"If an ordinarily prudent man would not have hitched these horses at the time and place and under the circumstances in question, the defendant was not guilty of negligence in failing to hitch the horses."

(6)    "If an ordinarily prudent man would have left these horses standing as these horses were left standing at the time and place and under the circumstances in question, the defendant was not guilty of negligence."

These requests were properly refused. The duty of all

men, prudent or otherwise, is defined in Gen. Laws, cap. 74, § 4, hereinbefore set forth.

(7)    The twenty-fifth exception is to the following portion of the charge of the presiding justice to the jury: "Well, gentlemen, it is the law, as I understand it, that horses which are left in a highway must be either properly hitched, properly weighted, or there must be somebody in immediate attendance upon them, so near to them that they can control the movements of the horse by their voice, or can readily reach the horse's head so as to secure him in case of danger." The exception is without merit; the court correctly stated the law of the State upon the subject.

The twenty-sixth exception was taken to the following portion of the charge of the court. "And I can only reiterate to you, gentlemen, my understanding of the law that it is necessary either to have a horse properly secured or else to have somebody in immediate attendance upon him so as to exercise control over the horse by voice or by action." The charge is an admirable statement of the law, and the exception must be overruled.

The twenty-seventh exception is to a portion of the charge of the presiding justice, as follows: "If the circumstances are so that it would not have done him any good to look or listen, then, gentlemen, he would be excused from doing so but otherwise not."

This was but a portion of the charge of the judge upon that branch of the subject; the entire charge in reference to the duty of the plaintiff to look and listen was complete and correct.

The twenty-eighth, twenty-ninth, thirtieth, thirty-first, and thirty-second exceptions are based upon the denial of the presiding justice to grant the defendant's motion for a new trial, based upon the following grounds:

"The verdict is against the law.

"The verdict is against the evidence and the weight thereof.

"The verdict is against the law and the evidence and the weight thereof.

"The damages awarded in said cause were grossly excessive and unjust.

"The defendant has discovered new and material evidence which it had not discovered at the time of the trial of said cause, and which it could not have discovered at said time by the exercise of reasonable care."

No affidavits of newly discovered evidence have been filed, and no mention of the existence of any having been made, we presume that this ground was inserted in the motion, out of abundant caution, as a foundation for such a claim if it should materialize.

We have already decided that, in view of all the evidence relating to injuries and damages, the amount awarded by the jury is not excessive.

The verdict is neither against the law nor the evidence or weight thereof. On the contrary, it is amply supported by the same. The gross negligence of the defendant's servant inflicted upon the plaintiff serious injuries, which might have been fatal, through no fault of his; and a jury has awarded him merely compensatory damages therefor. The verdict ought not to be disturbed.

The defendant's exceptions are overruled, and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*John W. Hogan,* for plaintiff.
*Waterman, Curran, and Hunt* for defendant.
*Lewis A. Waterman,* of counsel.